## CITY OF BIG SPRING v. TATE.
### No. 2253.

Court of Civil Appeals of Texas. Eastland.
May 1, 1942.

Coffee & Coffee, of Big Spring, for appellant.

Thomas & Thomas, of Big Spring, for appellee.

LESLIE, Chief Justice.

M. H. Tate instituted this suit against the City of Big Spring to cancel a reassessment certificate issued by said City, and to remove cloud from his title caused thereby. The City filed a cross-action seeking judgment upon such reassessment certificate and foreclosure of paving lien. A trial resulted in a judgment in favor of Tate and the City appeals.

No findings of fact or conclusions of law were requested by either party and none were filed.

Appellant admits that the testimony shows the premises constituted the homestead of Tate at time assessment ordinance was passed, and that it is not entitled to foreclosure of paving lien. The City merely claims the right to a personal judgment against Tate.

The City of Big Spring by ordinance approved June 22, 1937, ordered a street paved and a portion of the cost assessed against abutting property and owners. After due notice, the City by ordinances approved April 12, 1938, assessed a portion of the cost of said street improvements against the abutting property and its owners, and pursuant to the terms of said ordinances, assessment certificates were issued which by their terms were due and payable June 10, 1938. An assessment of $88.50 was made against Tate and his property. More than two years after the assessment or assessment certificate was due (June 10, 1938) by its terms, the City of Big Spring filed suit against said Tate on said original assessment as evidenced by its assessment certificate. It was in response to that petition that Tate pleaded the two years' statute of limitation, Vermon's Ann.Civ.St. Art. 5526, which prompted the City to dismiss that suit without prejudice.

After such non suit, the City of Big Spring provided by ordinance approved on September 24, 1940, for a hearing on the question of reassessment against Tate and his property. After due notice thereof, the City by ordinance approved October 22, 1940, reassessed against Tate's property and himself personally the said sum of $88.50, and pursuant to that ordinance issued an assessment certificate against the Tate property. It is this reassessment that furnishes the subject matter of this suit which was filed November 9, 1940, by Tate to set aside and cancel said assessment (reassessment). This second suit was filed 17 days after the assessment (reassessment) was made and certificate issued. The effect of such reassessment, if valid, would be to circumvent the bar of limitation. The attorneys for the respective litigants do not materially differ as to controlling questions presented by this appeal:

(1) "Did the City of Big Spring (a home rule city) have the authority to construct street improvements and assess a portion of the cost of same against abutting property and owners thereof under and according to the provisions of Art. 1105b of Vernon's Revised Civil Statutes? That is, was Art. 1105b applicable and available to the City of Big Spring as the statute governing its street improvements?"

(2) "Could the City of Big Spring after the original assessment was more than two years past due and limitation pleaded against its enforcement, make a reassessment against appellee and his property?"

For reasons hereinafter stated, we are of the opinion the first question should be answered in the affirmative, and the second, in the negative.

Appellant's first proposition is to the effect "that since the home rule charter of the City of Big Spring did not contain any provisions of any kind with reference to street improvements or the making of assessments against abutting property owners for a portion of the cost thereof, the City of Big Spring was not required to amend its charter to make the provisions of Art. 1105b, chap. 106, Acts 1927, 1st c. s. 40th Leg., available to it; and the fact that the City of Big Spring made said street improvements and the assesssment against the abutting property and the owners thereof under and pursuant to the terms and provisions of Art. 1105b constituted a sufficient adoption of this statute by the City of Big Spring."

It is undisputed that the City of Big Spring in carrying out said paving program

appropriated fully and exclusively the provisions of said statute (1105b) or the paving plan provided thereby. Except to make use of same, the City took no other affirmative steps to adopt that statute.

"It is the contention of the appellee that 1105b and the provisions thereof, according to its own terms, can be adopted by a home rule city which has a charter existing prior to the date of the passage of Art. 1105b, June 1927, only by an amendment of such charter adopting such provisions either in general or in specific terms."

Under such facts, we are of the opinion the City of Big Spring was authorized to appropriate said statute for its paving program. The provisions of said statute constitute a complete paving act or program within themselves (Murray v. Reagan, 129 Tex. 206, 102 S.W.2d 202), and when the act is used in its entirety and to the exclusion of any other existing law or charter provisions for the pavement of streets, the same may be so appropriated merely by use thereof, and that without the necessity on part of such city expressly adopting its provisions by amendment of its charter to that effect either "in general or by specific terms." User alone would be sufficient as held in West Texas Const. Co. v. Doss, Tex.Civ.App., 59 S.W.2d 866, expressly approved by our Supreme Court in 128 Tex. 339, 96 S.W.2d 1116, in this language: "The case is clearly and accurately stated in the opinion of the Court of Civil Appeals. 59 S.W.2d 866. Upon a careful review and consideration of the record, we have concluded that the questions presented were correctly decided by that court and that the reasons given for its holdings are correct." The Doss case is cited with approval in Murray v. Reagan, supra.

The Doss case involved a city incorporated under the general laws, but the reasons supporting the application of the statute in the disposition of that appeal are equally applicable to a home rule city.

Here, the City of Big Spring adopted the home rule charter September 28, 1926, and that charter (never amended) contained no provisions with reference to street improvements or assessments therefor. It does contain the following general provisions:

"Article III. City Powers

"Section 1. The enumeration of the powers hereinafter set out for greater certainty shall not preclude the exercise of any other powers not inconsistent with the Constitution and laws of Texas * * *."

"The City shall have all powers that now are, or hereafter may be granted to municipalities of its class by the Constitution or laws of the State of Texas; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed therein, in such manner as shall be provided by ordinances or resolutions enacted by the City Commission.

\* \* \* \* \*

"Article XII. Miscellaneous

"Section 8. The enumeration of powers granted to the said city by this charter, shall never be held to exclude the exercise of other powers, but the said city shall have and may exercise all powers not inconsistent with the Constitution and laws of the State or the terms of this charter."

Further, and pursuant to an election under the terms of Art. 1104, Vernon Ann. Civ. Statutes, said city did adopt on April 15, 1927, the paving provisions set out in Arts. 1086 to 1096, inclusive, and Arts. 1104 and 1105, Vernon's Ann. Civil Statutes. However, the provisions of Art. 1105b "exist as alternative powers, terms and provisions of all other laws and charter provisions in any wise relating to the same subject matter", and hence no reason exists why said City of Big Spring could not by the mere act of user appropriate the provisions or paving scheme established by said Art. 1105b.

Said article was enacted about June 18, 1927, and it was in 1937 when the City of Big Spring began the proceedings leading up to and resulting in the paving assessment involved in this cause.

The question of the authority of a home rule city at that time to adopt 1105b by appropriation or user thereof must be answered by a proper interpretation of Art. 1105b in the light of the terms of section 15 of the same. That section is: "Sec. 15. *This Act shall not repeal any law, general or special or charter provision already in existence, but powers, terms and provisions hereof shall exist as alternative powers, terms and provisions of all other laws and charter provisions in any wise relating to the same subject matter, and any city which shall hereafter adopt or amend its own charter under the terms of the Home Rule provisions of the Constitution may provide in any such charter or amendments thereto*

for any or all of the powers, terms or provisions herein contained either as alternative to or as part of or in lieu of any other charter provision then in force, *and specifically this Act shall not repeal Article 1086 to 1096, inclusive, and Articles 1104 and 1105, of the Revised Civil Statutes of the State of Texas, of 1925, but the law as embraced in said Articles shall and does remain in full force and effect, provided the terms, powers, and provisions of this Act shall not apply in any city not having more than one thousand inhabitants."*

In support of its contentions, appellant italicizes the provisions of said section as above, and the appellee likewise directs attention to that portion not italicized. When that statute (1105b) was enacted, Arts. 1086 to 1096, inclusive, and Arts. 1104 and 1105 Vernon's Ann. Civil Statutes, were in effect. These last statutes, (Art. 1086 et seq.) provide a system of paving laws and it was required that the same be adopted by a vote of the citizens before they could be made available to any city (Art. 1104), and said provisions were available to general law cities, special law cities and home rule cities alike, subject only to the common requirement that they must first be adopted by a vote of the citizens of the municipality.

When 1105b was adopted there were cities operating under special charters, and home rule charters, and some of these charters themselves contained provisions and regulations for street improvements, and as a result, there evidently existed much confusion as to the status of the law governing the subject matter of street improvements. Such situation is evidenced by the language of section 17 of the Act of 1927, which recites the existence of such confusion. See Murray v. Reagan, 129 Tex. 206, 102 S.W. 2d 202, pt. [1].

Article 1105b was by its terms made applicable to all cities, except those "not having more than one thousand inhabitants." Witness the all inclusive language with reference thereto. The caption of the act provides: "An act to authorize incorporated cities, towns, and villages incorporated under either general or special law, including those operating under a special charter or amendments of charter adopted pursuant to the Home Rule provisions of the Constitution to cause to be improved streets * * *."

Section 1 thereof provides: "That cities, towns and villages incorporated under either general or special law, including those operating under special charter, or amendments of charter adopted pursuant to the Home Rule provisions of the Constitution, shall have power to cause to be improved, * * *."

Section 2 provides: "That the term 'city' whenever used herein shall include all incorporated cities, town and villages * * *."

The first fourteen sections of the act contain nothing to indicate any distinction in any respect in the application of this act as between general law cities, special law cities, or home rule cities. Said fourteen provisions clearly reflect the application of the act to all cities regardless of kind. Such conclusion brings us to a consideration of the specific function of section 15, or the purpose prompting its enactment.

The purpose is clearly expressed in that section to make street improvement regulations (provided for in the operative portions of the act) apply to all classes of cities as an alternative plan for street improvements. That is, the plan was made alternative and available in a sense that each city would have to elect to follow the laws or provisions existing prior to the enactment of Art. 1105b insofar as applicable to a given city, or to follow the new law (1105b) fully and to the entire exclusion of any other plan or authority then available with respect to street improvements.

Attention is again directed to the italicized portions of said section 15. Such provisions are clearly applicable to all cities regardless of whether chartered under general law, operating under special charters, or under home rule charters, and there is nothing in the act itself or in the emphasized portion of section 15 which makes any distinction between cities or classes of cities.

Attention will now be directed to that portion of section 15 not italicized and in which mention is made of "home rule cities." That part of section 15 clearly reflects a legislative purpose of further and specially authorizing home rule cities (by adoption or amendment of such charter after the effective date of act of 1927 (1105b), to utilize the provisions of Art. 1105b in connection with their existing charter provisions as to street improvements, such utilization to be as a whole or as a part (specially adopted) of its street

improvement regulations. That is, through the authority so granted· (by Art. 1105b) the home rule city can construct its own· paving provisions and regulations, within the limits of the Constitution and laws of the State, by the special authority so given it, to incorporate· in such provisions and regulations all or such parts of Art. 1105b as it.desires. This logically follows from that portion of section 15 reading "and any city which shall hereafter adopt or amend its own charter under the terms of the Home Rule provisions of the Constitution *may* provide in any such charter or amendments thereto for any or all of the powers, terms or provisions herein contained either as alternative to or as part of or in lieu of any other charter provision then in force."

As we construe such language, it shows no purpose or intent to limit the application of this act (1105b) in reference to. home rule cities, but, on the contrary, it reflects a purpose to extend its application to such home rule cities beyond the limits or terms applicable to other cities so as to permit a home rule city to modify its plan and proceedings for street improvements so as to fit into the general plan (with special charter provisions) any part of Art. 1105b that such home rule city may wish to make applicable to itself; and in doing so the only additional requirement in this respect would be that such additional application of the act by the home rule city must be taken advantage of by the adoption or amendment of its charter. Otherwise, it may do as other cities, appropriate in its entirety and by user only the full provisions of the act of 1927, 1105b.

Any such home rule city appropriating by charter or amendment and fitting them into its pre-existing paving program or scheme would be required to construct a plan with provisions consistent with each other, non conflicting and in harmony with constitutional and statutory provisions.

The appellee relies in a large measure on· the opinion in Scanlan v. Continental Inv. Co., 126 Tex. 401, 87 S.W.2d 476. That opinion involves a paving proceeding begun in 1929 by Houston, a home rule city since 1913, and as said in the opinion, the paving "proceeding was instituted and conducted in pursuance of provisions contained in the city charter, which *differ* in various respects from the proceeding prescribed in the act passed by the Legislature in the year 1927 * * * [said act is chap. 106, Acts 1927, 1st Called Sess., 40th Leg. or what is known as ·Art. 1105b, Vernon's Ann.Civ.St. and containing 17 sections]. The proceeding resulted in an assessment being made against Kate Scanlan and her two sisters, jointly, who jointly owned a parcel of land abutting the street that was paved." Because the City of Houston in 1913 adopted a home rule charter containing the following provision: "The city shall have all powers that are or hereafter may be granted to municipalities by the Constitution and laws of Texas; all such powers, whether expressed or implied, shall be exercised· and enforced in the manner prescribed by this charter or, when not prescribed herein, in such manner as shall be provided by ordinance or resolution of the city council"—it was contended in the Scanlan case that the effect of such provision (just quoted) "did not have effect to make section 11 of the act of 1927 a part of the city charter, because the city, being a home-rule city, did not amend its charter after the passage of said act, as provided in section 15 of the act." The court in the Scanlan opinion pronounced this contention sound, and in order to understand and make a proper application of that opinion it must be borne in mind that the City of Houston undertook the paving proceeding in 1929 "in pursuance of provisions contained in the city charter" (of 1913) and did not undertake to pave said street by use, or appropriation of the complete provisions of Art. 1105b adopted in 1927. Significantly the opinion in the Scanlan case states that the provisions in the Houston charter of 1913 "differ in various respects from the proceeding prescribed in the Act passed * * * in * * * 1927." The particular respect in which the 1913 Houston charter differed from the paving plan or program reflected by Art. 1105b is in this:

In the Scanlan case, the assessment was made jointly against joint owners of property. In that respect, such procedure was not authorized by any provision of said city charter (1913), although the city probably considered such "joint" assessment made "in pursuance of provisions contained in the city charter" of 1913. When the suit arose in that case it was sought to justify and foreclose the joint assessment lien under section 11 of Art. 1105b, which, in part, reads: " * * * and property owned jointly by one or more persons, firms or corporations, may be assessed jointly."

Clearly, this last provision when made applicable authorizes such assessment as was made in the Houston case, but, as stated, no such authority was found in the Houston charter (1913) pursuant to which the paving program was carried out. The question of Houston's authority to adopt fully by user or otherwise the paving program prescribed by Art. 1105b was not before the court, but that court merely had for consideration the power or authority of that city to assess and pave "pursuant" to its original paving procedure or program, and thereafter justify or enforce the same under authority for "joint assessment" found only in section 11 of Art. 1105b. The answer to such a question is obvious.

As before stated, any city to which Art. 1105b is applicable, including home rule cities, may appropriate or use the provisions of Art. 1105b provided its provisions are utilized as a complete paving program, but in the case of a home rule city a further and additional authority is given by that act to appropriate such parts of 1105b as it desires and deems essential to its own constructed paving program, provided such parts or provisions of 1105b are appropriated by charter or charter amendment and a consistent and legal paving program is thus constructed.

Hence, we do not believe the opinion in the Scanlan case on the point decided is in any respect authority for the contention of the appellee, namely, that the paving plan of 1105b was not available to the City of Big Spring until after its adoption by charter or amendment of charter. The proper application and interpretation of that opinion (November 20, 1935) cannot be determined without reading the same in the light of the opinion in the Doss case of later date (October 7, 1936). When so considered, we think nothing will be found in this opinion in conflict with, or out of line with, the conclusions in the Scanlan opinion essential to the disposition of the material and controlling question therein.

Further, in the disposition made of this appeal, we do not think there is any lack of harmony on material questions with the opinion in Citizens Nat. Bank of Waco v. City of Waco, Tex.Civ.App., 94 S.W.2d 1182. That opinion (May 14, 1936) was prior to the Doss opinion of October 7, 1936. It has heretofore been pointed out that the latter opinion holds that Art. 1105b

as a paving plan may be adopted by a city incorporated under the general law and that it may do so by user only and without being expressly adopted. For the reasons given we think a home rule city may do likewise.

■ As to the second point, and for the following reasons, we conclude the City of Big Spring could not make a reassessment against appellee and his property after the original assessment became barred, limitation pleaded to suit thereon, and a non suit taken: We do not believe that a reassessment can be predicated upon the bar of limitation. Section 13 of Art. 1105b is as follows: "In case any assessment shall for any reason whatsoever be held or determined to be invalid or unenforceable, then the governing body of such city is empowered to supply any deficiency in proceedings with *reference thereto* and correct any mistake or irregularity in *connection therewith,* and at any time to make and levy reassessments after notice and hearing as nearly as possible in the manner herein provided for original assessments, and subject to the provisions hereof with reference to special benefits."

We do not believe this statute works any repeal of the statute of limitation by implication or otherwise. If the Legislature had intended by said Act of 1927 (1105b) to make a valid paving assessment thereunder an exception to the statute of two years limitation, as applied in such cases as O'Connor v. Koch, 9 Tex.Civ. App. 586, 29 S.W. 400, writ refused; City of Fort Worth v. Rosen, Tex.Civ.App., 203 S.W. 84; Id., Tex.Com.App., 228 S.W. 933, (uniformly followed by subsequent cases), it could and doubtless would have said so in so many words. That statute does permit the city to reassess at any time when the paving assessment is found to be originally and intrinsically insufficient and it becomes necessary "to supply any *deficiency* in proceedings with *reference thereto* and *correct* any *mistake* or *irregularity in connection therewith."* Clearly, the running of the statute of limitation could not be classified as a "deficiency in proceedings" in reference to such original assessment and in no sense could it be considered the same or equivalent of "mistake or irregularity in connection" with such assessment. This statute states the grounds upon which a reassessment may be based and the running of limitation is not one of them, but it is by

necessary implication excluded by the language of the statute. Since the reassessment does not rest upon any valid statutory authority, the judgment in favor of Tate is affirmed.